IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATS OF AMERICA                                                                     PLAINTIFF

v.                                     Case No. 1:15-cr-10014

ORLANDO DESHUN MITCHELL                                          DEFENDANT

**ORDER**

Before the Court is Defendant Orland Deshun Mitchell's Motion for Compassionate Release. ECF No. 59. The Government has responded. ECF No. 66. Defendant has replied. ECF No. 68. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

On July 22, 2015, Defendant was indicted on two counts of distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). ECF No. 1. On February 2, 2016, Defendant plead guilty to one count of the indictment. ECF No. 24. On February 16, 2017, Defendant was sentenced to one hundred forty (140) months imprisonment with credit for time served in federal custody, four (4) years supervised release, and a $100 special assessment. ECF No. 34.

On April 4, 2019, Defendant filed his initial Motion for Compassionate Release. ECF No. 55. Defendant sought release from confinement due to the ongoing Covid-19 pandemic. *Id*. The Court subsequently appointed the Federal Public Defender to represent Defendant for his motion for compassionate release. On June 21, 2022, Defendant filed his renewed Motion to Reduce Sentence, seeking compassionate release pursuant to Section 603 of the First Step Act ("FSA"). ECF No. 59. Defendant argues that the ongoing pandemic has created a situation that permits his release from confinement because his medical issues put him at serious risk of harm if he contracts

Covid-19. *Id*. The Government responded in opposition, arguing that the full picture of the circumstances does not justify Defendant's release and that Defendant's history also precludes release. ECF No. 66. Defendant replied, arguing that the Government's arguments regarding the health risks faced by Defendant rely on outdated information. ECF No. 68.

## II. DISCUSSION

Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Before an analysis of those factors can begin, the Court must determine if Defendant has exhausted all administrative remedies available. 18 U.S.C. § 3582(c)(1)(A).

### A. Exhaustion of Administrative Remedies

The FSA provides two avenues for a defendant to bring a compassionate release motion to a district court. The defendant may either file a motion once he "has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons] to bring the motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

The Bureau of Prisons ("BOP") has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility in which the defendant is housed. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's

director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b)-(c). Failure to exhaust the administrative remedies available with the BOP forecloses the consideration of any motion for compassionate release on its merits. *See U.S. v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).

In this matter, Defendant sent his request for release to his warden on March 7, 2022, and did not receive a response within thirty-days. ECF No. 59-1. The Government does not dispute that Defendant has exhausted his administrative remedies and is eligible to submit his request for relief directly with this Court. ECF No. 66, p. 4-5. Accordingly, the Court finds that Defendant has exhausted his administrative remedies and his request for release may be evaluated on the merits.

### B. Extraordinary and Compelling Reasons

Pursuant to the FSA, the Court can grant Defendant's request for a sentence reduction "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress has not defined what constitutes

"extraordinary and compelling" reasons, although it did note that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Thus, the Court looks to the Sentencing Commission's policy statement in the United States Sentencing Guidelines ("USSG") as a starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). *See id.*

The relevant policy statement contemplates a reduction in the term of imprisonment if "extraordinary and compelling reasons warrant the reduction." USSG § 1B1.13(1)(A).[1] This policy statement limits "extraordinary and compelling reasons" to only include the following four circumstances:

(A) Medical Condition of the Defendant. –

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is –
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,

---

[1] This policy statement predates the FSA and the Sentencing Commission has not since updated it or adopted a new policy statement. This creates an issue because parts of the pre-FSA policy statement do not square neatly with the language of the FSA. *See* U.S.S.G. § 1B1.13 (authorizing compassionate release only on the BOP's motion). Thus, it is unclear whether extraordinary and compelling reasons may be found only from the specific examples listed in the pre-FSA policy statement or if courts can look beyond those examples. Some Circuits have determined that the policy statement is inapplicable to inmate requests for relief and that the court must determine for itself what is an "extraordinary and compelling" reason. *See e.g.*, *United States v. Brooker(Zullo)*, 976 F.3d 228, 236 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020). However, the Eighth Circuit has determined that the policy statement, while not binding, cannot be ignored and should provide guidance on what constitutes "extraordinary and compelling" reasons. *See U.S. v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021).

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B) Age of Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

  (C) Family Circumstances. –

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Defendant argues that his serious health issues combined with his confinement and the ongoing Covid-19 pandemic create extraordinary and compelling reasons that justify his release. ECF No. 59, p. 6-12. Defendant notes that his medical conditions, such as obesity, Type 2 Diabetes, and hypertension, and his race, as an African American, are factors known to place him at a significantly elevated risk of adverse impacts upon contracting Covid-19. *Id*. at p. 9-12. Defendant further argues that his confinement coupled with the emergence of more transmissible Covid-19 variants makes contracting Covid-19 inevitable. *Id*. at pp. 8-9, 11-12. Defendant concludes that these circumstances create extraordinary and compelling reasons for his release under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I)'s reference to serious medical ailments that he cannot provide self-care for while in a prison environment. *Id*. at p. 11-12.

The Government's response in opposition argues that a full view of the circumstances indicate that Defendant is not at significant health risks and that his release is not warranted. ECF No. 66, p. 5-12. The Government first notes the various measures taken by the BOP to mitigate

the spread of Covid-19 within its facilities.[2]  *Id*. at p. 5-8.  The Government further notes that Defendant's current facility of confinement, FPC Montgomery, reports single digit numbers of inmates and staff that are infected.  *Id*. at p. 7.  The Government then argues that Defendant's receipt of the full MODERNA Covid-19 vaccine and a subsequent booster provides significant protection from serious adverse effects from contracting Covid-19.  *Id*. at p. 8-9.  Lastly, the Government argues that the fact that Defendant has already contracted and recovered from Covid-19 without any noted serious effects significantly diminishes the amount of risk Defendant can claim he faces.  *Id*. at p. 10-12.

Defendant argues in his reply that the Government has overstated the efficacy of the Covid-19 vaccinations in light of the emerging variants.  ECF No. 68, p. 2-5.  Defendant argues that his re-infection is likely because of the emergence of the more transmissible variants.  *Id*. at p. 5. Defendant also argues that new data shows that vaccination and a subsequent booster do not provide the same amount of protection against the new variants as they did against prior versions. *Id*. at p. 2-4.  Again noting that his various health issues are associated with increased risk of serious adverse effects from contracting Covid-19, Defendant argues that re-infection with the new variants still poses a significant risk to his health and justifies early release.  *Id*. at p. 2-5.

The Court finds that Defendant has failed to show that his current circumstances rise to the level of extraordinary and compelling justifying his release from confinement.  Defendant is correct that his health issues and race are associated with an elevated risk of severe illness or death

---

[2] These measures include testing and screening of BOP staff and inmates, quarantining infected inmates, and significantly limiting outside visitor access.  ECF No. 66, p. 5-7.

upon contracting Covid-19.[3] [4] However, recent data shows that a second Covid-19 booster provides elevated protection from serious adverse health impacts upon contracting Covid-19 during the emergence of the new variants.[5] The BOP is currently offering vaccinations and all vaccine boosters to inmates in accordance with CDC guidelines.[6] Together with Defendant's prior recovery from Covid-19 without any serious effects, the availability of another booster shot significantly undermines Defendant's argument that there are not means available to protect himself from the risks of reinfection during his confinement. Therefore, the Court cannot view Defendant's circumstances as extraordinary and compelling under the provision regarding specific medical conditions under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I) or the general catch-all provision of U.S.S.G. § 1B1.13 cmt. n.1(D). Accordingly, Defendant has failed to show that his circumstances justify release under 18 U.S.C. § 3582(c)(1)(A)(i) and his motion must fail.

### C. § 3553(a) Sentencing Factors

In a motion for release pursuant to the FSA, courts must also determine if the sentencing factors under 18 U.S.C. § 3553(a) support an inmate's release. 18 U.S.C. § 3582(c)(1)(A). That statute provides:

> (a) Factors To Be Considered in Imposing a Sentence. — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

---

[3] Ctrs. for Disease Control & Prevention, *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals* (Dec. 14, 2022), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (noting that certain racial and ethnic minorities are more likely to be infected and incur severe impacts upon infection).
[4] Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions* (Dec. 14, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (noting that obesity, hypertension, and Type 2 Diabetes are associated with increased risk of serious illness upon contracting Covid-19).
[5] Ctrs. for Disease Control & Prevention, *COVID Data Tracker* (Dec. 14, 2022), https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (chart shows initial effectiveness of vaccinations and the efficacy of two boosters against new strains).
[6] Fed. Bureau of Prisons, *COVID-19 Coronavirus* (Dec. 14, 2022), https://www.bop.gov/coronavirus/index.jsp (noting that initial vaccinations and boosters are available to all BOP inmates).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.
>
> 18 U.S.C. § 3553(a).

Defendant argues that the sentencing factors support his request for release. ECF No. 59, p. 12-14. Defendant notes that he has had no disciplinary violations during his confinement and has consequently been moved from a high security risk designation to a low designation. *Id*. at p. 12. Defendant also notes that he has completed the Residential Drug Abuse Program ("RDAP"), several other educational courses, and FSA programming that will allow him to move to supervision in June 2023. *Id*. Defendant further notes that he has been evaluated as release eligible under 18 U.S.C. § 3621 because he has been deemed a low risk for recidivism. *Id*. Defendant argues that his impeccable record during confinement, combined with his anticipated stability and

employment upon release, demonstrate that Defendant's release is appropriate in light of the sentencing considerations. *Id*. at p. 12-14. Defendant also argues that the Covid-19 pandemic has created a harsher sentence than initially anticipated, especially in light of his health issues. *Id*. at p. 13.

The Government argues that an examination of the sentencing factors precludes releasing Defendant. ECF No. 66, p. 13-14. The Government notes that the § 3553 factors were already evaluated at the time of Defendant's sentencing and helped determine the current term of confinement. *Id*. at p. 13. The Government further notes that the 140-month sentence received by Defendant was significantly lower that the guideline range of 188 to 235 months calculated for Defendant prior to sentencing. *Id*. The Government contends that release at this time would undermine the seriousness of Defendant's crime, respect for the law, and the deterrence effects of his sentence. *Id*. at p. 13-14. In his reply, Defendant argues that his time in confinement has served its rehabilitative purposes and that Defendant is already considered a lower risk inmate and is scheduled to begin serving his sentence in a halfway house in November 2022. ECF No. 68, p. 5-6.

The Court finds that the § 3553(a) sentencing factors weigh against Defendant's request for early release. As the Court determined above regarding the risks the pandemic poses to Defendant, the availability of an additional Covid-19 booster prevents the Court from viewing his sentence as now harsher than when initially set. Therefore, the 140-month sentence is still necessary to reflect the seriousness of his offense and provide adequate deterrence to future criminal conduct under § 3553(a)(2)(A) and (B). The Pre-Sentence Investigative Report determined that Defendant should be designated as a career offender and that he committed his latest offense while on parole for a prior State offense. ECF No. 30, p. 20. That weighs heavily

9

against him under § 3553(a)(2)(C)'s consideration of protecting the public from future crimes of a defendant and § 3553(a)(1)'s consideration of the circumstances surrounding Defendant's conviction and his overall criminal history. The Court takes note of Defendant's exemplary record during confinement and his efforts towards his education and rehabilitation. However, the Court does not view them as sufficient at this time to overcome the required examination of his criminal history. Accordingly, the Court finds that sentencing factors do not support Defendant's request for release and his motion must also fail on this ground. 18 U.S.C. § 3582(c)(1)(A).

### D. Safety Considerations Under 18 U.S.C. § 3142(g)

The requirement under 18 U.S.C. § 3582(c)(1)(A) that any reduction be consistent with any applicable policy statements issued by the Sentencing Commission necessitates an evaluation of the 18 U.S.C. § 3142(g) safety factors. *See* USSG § 1B1.13(2). The factors for consideration under § 3142(g) are:

> (g) Factors to be considered.-The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;
> >
> > (3) the history and characteristics of the person, including—
> >
> > > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal,

>> or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Defendant argues that his release from confinement would pose no danger to the community. ECF No. 59, p. 14. Defendant contends that the time spent in confinement, which has been roughly 90 months as of the date of this order, has served it rehabilitative purposes. *Id*. Defendant again notes that the BOP has determined that he is at a low risk for recidivism and that he has been housed at a minimum security facility. *Id*. Defendant reiterates that his completion of educational and FSA courses during confinement as well as his anticipated stability upon release are further evidence of the low threat he poses if released. *Id*.

The Government argues that Defendant's criminal history prevents his release. ECF No. 66, p. 12-13. The Government emphasizes Defendant's lengthy criminal history that qualified him as a career offender and that Defendant committed six drug-related offenses prior to his most recent offense. *Id*. at p. 12. The Government contends that this indicates a high likelihood of committing another drug offense if released before the full completion of his term of confinement. *Id*. at p. 12-13. Defendant's arguments in reply regarding the safety considerations largely mirror those regarding the sentencing considerations, emphasizing Defendant's rehabilitation, low recidivism risk status, and the plans he has for housing and employment after release. ECF No. 68, p. 5-6.

The Court finds that an evaluation of the § 3142(g) safety considerations similarly precludes Defendant's release. Defendant's current conviction involved distribution of a controlled substance, which directly weighs against him under § 3142(g)(1). Defendant's extensive criminal history and the fact that he was on parole at the time he committed the crime for which he is currently confined similarly weighs against him under § 3142(g)(3)(A) and (B), respectively. These direct conflicts with the § 3142(g) safety considerations prevent the Court from finding that Defendant's release is appropriate. Accordingly, Defendant's motion must also fail on this ground. 18 U.S.C. § 3582(c)(1)(A).

### III. CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion for Compassionate Release (ECF No. 55) and Motion to Reduce Sentence (ECF No. 59) should be and hereby are **DENIED**.

**IT IS SO ORDERED**, this 15th day of December, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge